## BLEIDORN v. ABEL et al.

The revenue act of 1847, was repealed by the Code, without any saving of the remedies existing at the time of the repeal, for the collection of taxes levied and delinquent; and there was no authority under the Code, for selling in 1852, lands delinquent for the taxes of 1848.

A county treasurer's deed of real estate, made under a sale in 1852, for the delinquent taxes of 1848, conveys no title to the purchaser at such sale.

Under the revenue act of 1847, there could rightfully be no judgment against, or sale of, the lands, in 1852, for the unpaid taxes of 1849 and 1850. Such a sale could only take place in pursuance of a judgment in the district court, against the lands, for the taxes due and unpaid, which judgment could only be rendered upon a return of the county

treasurer, showing that the taxes had remained due and unpaid for the term of two years from the first day of January next, after the delinquent list had been filed in his office.

A sale of lands in 1852, by a county treasurer, for the delinquent taxes of 1849 and 1850, derives no support from the provisions of the Code, as under section 496, the treasurer was authorized to sell in each year, only the lands upon which the taxes levied the preceding year, remained unpaid.

No authority to sell lands for the unpaid taxes of any year prior to 1851, was vested in the county treasurers, until the passage of the act entitled "An act to enforce the claims of the state and county against lands and lots, on which the owners have failed to pay the taxes charged thereon, prior to 1851," approved January 22, 1853.

A decree of foreclosure under a tax deed for lands sold in 1852, for the delinquent taxes of 1851, will not affect the interest of any person claiming a title to, or lien upon, the lands, previous to the tax sale, not a party to the suit.

In proceedings to foreclose the equity of redemption under a tax deed, as in proceedings to foreclose a mortgage, all incumbrances, whether prior or subsequent, not made parties, are not bound by the decree.

In a proceeding by an assignee to foreclose a mortgage, as against the mortgagor, and other parties claiming title under a tax deed under the Code, which tax deed has been foreclosed against the mortgagor, and where the conclusive effect of the decree of foreclosure under the tax deed, depends upon the fact, whether or not the complainant was a prior incumbrancer upon the land, the respondents who claim under the tax title, are entitled to demand that the complainant makes out his right to a decree against the mortgagor, by sufficient testimony.

*Appeal from the Johnson District Court.*

SATURDAY, APRIL 10.

Bill to foreclose three mortgages on certain real estate in Johnson county, executed by John F. Heyne and wife, to Bell and Hull, to secure the payment of certain promissory notes, which mortgages and notes had been transferred to the complainant. The first mortgage is dated August 4, 1846; the second, October 23, 1846; and the third, August 5, 1847. After the execution of the mortgages, and on the first of September, 1849, Heyne and wife conveyed the premises to Schrœder. Heyne and wife, Schrœder, and the Abels, who were in possession of the

premises, and claimed title thereto, by virtue of certain tax deeds, were made respondents. The petition alleges that two of the notes secured by the said mortgages have been lost, and calls upon the Abels to disclose their title.

The respondents, Heyne and wife, did not answer. Schrœder confessed the bill. The Abels answered under oath, and admit the execution of the mortgages by Heyne and wife. They further say, that they possess no knowledge, information, nor belief, as to whether any or all of the notes in said mortgages described, or any part thereof, remain due and unpaid; nor as to whether any' of said notes have been lost; nor as to whether Oliver Wetmore was the attorney of John R. Hull and Thompson Bell, the mortgagees, and authorized to transfer and assign said mortgages to the complainant—as to all which matters they call for proof. The said Abels, also, claimed title to the premises, under and by virtue of four tax deeds, executed to Alexander Abel, by the treasurer of Johnson county, as follows: 1. A deed for the taxes of 1848, dated July 26, 1854; 2. A deed for the taxes of 1849, dated April 19, 1852; 3. A deed for the taxes of 1850, and a deed for the taxes of 1851, both dated April 19, 1852. The first two deeds were made under the revenue act of 1844, and the last two, under the Code. The equity of redemption under the last two deeds, was foreclosed against Heyne and wife, and all persons claiming under them, which proceedings are made a part of the answer. The decree of foreclosure was rendered November 2, 1853. The new matter set up in the answer of the Abels, was denied by the complainant.

On the hearing of the cause, the complainant offered in evidence, a letter of attorney from Peter McLaren, the first assignee of one of the mortgages, and under whom complainant claimed, to Oliver Wetmore, and a similar letter from Hull, the other mortgagee, to Wetmore, authorizing the said Wetmore to transfer the said mortgages, which were objected to by the respondents, the Abels, for the following reasons:

1. That said letters of attorney were not admissible in evidence, without proof of the same, either by calling the subscribing witness, and proving the signature of the grantor, or by accounting for the absence of the said subscribing witness, and proving the signature either of such witness, or of the grantor.

2. That the certificates of acknowledgment to said letters of attorney, did not show that the said grantors were personally known to the officers taking the same, nor that they were proved to be the persons who signed the same, by a credible witness.

The court sustained the objection, and excluded the evidence, to which the complainant excepted. He then offered in evidence, the three mortgages, and the notes said mortgages were given to secure, except those alleged to be lost, with the assignments thereon, which purported to have been made by McLaren and Hull, by Oliver Wetmore, their attorney—to which the respondents objected, for the reasons following:

1. That there was no legal evidence that Oliver Wetmore was the attorney of the said McLaren and Hull, and authorized to assign the said notes and mortgages to the complainant.

2. That in order to show title to the notes and mortgages in the complainant, the authority of Wetmore to make the assignments to him, must be shown.

The objection was overruled, and the evidence admitted —to all which the respondents excepted. The complainants then offered in evidence, copies of two notes alleged to be lost, to which the respondents objected, for the reasons following:

1. That there was no evidence of the loss of the said notes;

2. That in the absence of said notes, and in the absence of proof of their loss, the presumption was that they had been paid;

3. That there was no evidence that said notes had ever been assigned to complainant.

The court overruled the objection, and admitted the evidence, to which the respondents excepted. The complainant then offered in evidence, the said deed from Heyne and wife to Schrœder, dated September 1, 1849, which was objected to by the respondents, for the reasons following:

1. That the acknowledgment of said deed, did not show that the grantors were personally known to the officer taking the same, nor were they proven by one credible witness, to be the persons whose names were subscribed to said deed.

2. That said certificate of acknowledgment did not show that the said Henrietta Heyne, was acquainted with the contents of said deed, nor that she relinquished her dower in said premises.

The objection being overruled, the deed was admitted in evidence, to which respondents excepted. The complainant here rested his case. The respondents, the Abels, to sustain the issue on their part, then offered in evidence, a judgment rendered in the district court in Johnson county, at the March term, 1852, against the lands described in the said mortgages, for taxes assessed for the years 1847 and 1848, and the tax deeds, and proceedings in foreclosure under the Code, as set up in the answer, to all which the complainant objected, but the objection was overruled, and the evidence admitted, to which the complainant excepted. The court found the equity of the cause to be with the respondents, the Abels, and dismissed the bill of the complainant, with costs. From this decree, the complainant appeals.

*Geo. D. Woodin* and *Wm. E. Miller*, for the appellant.

The parties making defence have no legal title whatever in the land. It was sold April 19, 1852, for the taxes due for the four years preceding, and three deeds therefor executed to Alexander Abel—one deed under the law of 1847, for the taxes due for the years 1847 and 1848; the

second, under the Code, for the taxes of 1849, and the other, for the years of 1850 and 1851. We claim that all of these deeds are void. The statute of 1847, had been repealed before the sale; and under it, after its repeal, the treasurer had no right to proceed to collect the taxes for the years of 1847 and 1848. Blackwell on Tax Titles, 553; *McQuilkin* v. *Stoddard,* 8 Blackf., 581; Dwarris on Stat., 676; *Butler* v. *Palmer,* 1 Hill, 324; *Hunt* v. *Jennings,* 5 Blackf., 135; *Bruce* v. *Schuyler,* 4 Gilm., 221; *Brown* v. *Vrazie,* 25 Maine, 359; *Eldridge* v. *Tibbitts,* 5 Lou., 380; Smith's Com., 890. The same principle is clearly recognized, although in the decision of another question, in *Wright* v. *Marsh,* 2 G. Greene, 94; *Plymouth* v. *Jackson,* 15 Pa. State, 44; *Butler* v. *Chariton Co.,* 13 Missouri, 112; *Fletcher* v. *Peck,* 6 Cranch, 87. But if the sale was legal, and this deed valid, the respondents have failed to support it by the proper proof. The only evidence offered in its support, was the record of the district court, at the March term, 1852, condemning the land to sale. We desire on this point, only to refer to *Scott* v. *Babcock,* 3 G. Greene, 133.

The other deeds executed at the same time, for the taxes due for the years 1849, '50 and '51, are also void. Under the provisions of the Code, the treasurer had no authority to sell lands for taxes becoming due before its enactment. There is no provision that it shall apply to taxes then delinquent, but only to those thereafter to become due. To remedy this, the general assembly passed the act of 1853. Until that act took effect, the taxes remaining unpaid for any year prior to 1851, could not be collected under the provisions of the Code. No revenue law is to have a retrospective action, unless the language of the law is clear and explicit. Blackwell on Tax Tit., 561; *Garrett* v. *Wiggins,* 1 Scam., 335; 5 Monroe, 129; 7 Johns., 447; 3 Maine, 333; *Quackenbush* v. *Doe,* 1 Denio, 128. And it may be laid down as a general rule, that in determining the validity of a tax title, the case must be governed by the law as it stood at the time of the assessment and sale.

Blackw., 562; *Brown* v. *Vrazie*, 25 Maine, 359.    At the time of the assessment of the taxes for the years prior to 1851, the old law was in effect.    The assessment cannot be made under one law, and the sale under another.    In the case before referred to, *Bruce* v. *Schuyler*, 4 Gilm., 221, it was decided, that when the statute was repealed after the sale, but before the deed was executed, the officer should make the deed, from the fact that the purchaser had acquired rights under the law, before its repeal; but the case clearly recognizes the principle, that a sale for taxes cannot be made under one law, and the assessment under another; and also, that the sale could not be made, after the repeal of the act under which the assessment took place.

If the position be correct, that at the time of the sale, the treasurer had no right to sell the land for the taxes due prior to 1851, we think this deed is void, from the fact that it covers the taxes for 1849 and 1850, as well as those for the year 1851.    There is no way of dividing the purchase money, and the purchaser cannot say, because the treasurer had a right to sell the land for the taxes of 1851, therefore he has authority to proceed and foreclose for all that his deed may contain.    The deed covering the taxes for 1849 and 1850, is rendered void, although it likewise contains those for the year 1851.    If land be sold for the non-payment of taxes, one of which is legal, and the residue illegal, the sale is void.    Blackw., 192, 329; *Wallingford* v. *Fiske*, 24 Maine, 386; *McQuilkin* v. *Stoddard*, 8 Blackf., 582; *Weed* v. *McQuilkin*, 8 Ib., 335; *Hayden* v. *Foster*, 13 Pick., 492; *Kemper* v. *McClelland*, 19 Ohio, 324; *Elwell* v. *Shaw*, 1 Greenl., 335; *Huse* v. *Merriam*, 2 Ib., 375; *Drew* v. *Davis*, 10 Vt., 506.

We claim the sale of this land to be void, for another reason: It contains three separate tracts, all of which were sold together.    The Code, (page 84,) provides, that it shall be listed in parcels, and consequently sold in the same manner.    But even if the statute were silent upon this point, it appears clear that several tracts should not be included in the same bid, and all sold in a body.    Other-

wise, one piece of land may be compelled to pay the taxes due upon another, and one man to pay those belonging to another. Such a sale is illegal and void. *Shimire* v. *Inman*, 36 Maine, 228; *Willey* v. *Scoville*, 9 Ohio, 43; *Pitkin* v. *Gow*, 13 Ill., 253; *Andrews* v. *Senter*, 32 Maine, 394; *Morton* v. *Harris*, 9 Watts, 319; *Hayden* v. *Foster*, 13 Pick., 492.

Is the decree of foreclosure under the tax deed, binding upon the complainant? To foreclose upon a tax deed, section 506 of the Code provides, that the purchaser may, at any time after six months from the day of sale, file his petition in the district court, as in the case of a foreclosure of a mortgage. To foreclose upon a mortgage, section 2073 provides, that the notice must be served on the mortgagor, and upon all persons having recorded liens upon the property, which are paramount to the mortgage, or they will not be bound by the proceedings. Neither the mortgagees, nor their assignee, were made parties to the suit of foreclosure upon the tax deed. No notice of the pendency of the suit, was ever served upon them. Their liens were paramount to the lien of Abel for the taxes, and notice not having been served upon them, they are not bound, nor in any manner affected by the decree. Independent of an express statute requiring it, the authority is clear, that in order to cut off the prior recorded lien of a party, he must be made defendant, and have notice of the pendency of the suit. 2 Hill. on Mort., 82; *Adams* v. *Paynter*, 1 Cal., 530; *Milroy* v. *Stockwell*, 1 Smith, (Ia.,) 19. And in a late case, *Veach* v. *Schoup*, 3 Iowa, 194, this court has decided, that a person having a recorded lien upon the property, whether paramount or not, must be made party to the suit to foreclose, or he is not affected by the proceedings. The decree, if regular, therefore, is binding upon Heyne, but not upon his creditor, Bleidorn, who had a recorded mortgage upon the land.

Heyne having sold and conveyed to Shrœder, whose deed was recorded October 10, 1849, the assessment should have been made in his name. The assessment and sale of

the land, being in the wrong name, the sale is void.  The Code, (page 84,) requires the land to be listed, and consequently sold, in the name of the owner, if known; and if not known, then as unknown.  But where a person has his title of record, there is no excuse for the assessor, listing it either as unknown, or in the name of the wrong party.  If in the name of the wrong party, as in this instance, the sale is void, and under it no foreclosure can be had.  *Combs* v. *Warren*, 34 Maine, 89; *Yancey* v. *Hopkins*, 1 Munf., 419; *Martin* v. *Mansfield*, 3 Mass., 419; *Johnson* v. *McIntire*, 1 Bibb., 295; *Cardigan* v. *Page*, 6 N. Hamp., 182; *Nelson* v. *Pierce*, Ib., 194; *Ainsworth* v. *Dean*, 1 Foster, 400; *Merritt* v. *Thompson*, 13 Ill., 716.

At most, the purchaser can now claim under his decree only the interest which Heyne had in the land, at the time of the tax sale.  In *Dyer* v. *Branch Bank of Mobile*, 14 Ala., 622, Chief Justice Collier remarks: "It is clear that a purchaser at a sale under judicial process, for the payment of taxes, purchases the interest of the party whose property is sold, and not the independent and superior, or ultimate, title of a third person."  The same is substantially decided in *Neiswanger* v. *Gwynne*, 13 Ohio, 74, and *Dixon* v. *Doe*, 23 Miss., 84, goes farther even upon this point, than we desire to have it.  Apply the foregoing decisions to this case, and give to the tax purchaser all the interest which Heyne had in the land, at the time of the sale and foreclosure.  He had no interest whatever—had conveyed the same years before to Shrœder.  From this, we conclude, that the Abels are here defending without the shadow of a title.  This being the case, will they be permitted to defeat our recovery, by saying that we have not sufficiently shown that Bleidorn is the legal holder of the mortgages, and that they have never been assigned from Bell and Hull to him?  Shall they, with no interest whatever in the premises, be permitted to controvert the amount we are to recover, after default is made by the mortgagor, and judgment is confessed by his grantee, the legal owner of the land?

*Clarke & Henley*, for the Abels, made the following points :

*First.* The mortgages and notes having been assigned to the complainant, by a party professing to be an attorney of the holders, the assignments could not legally be offered in evidence, without some evidence of authority on the part of the attorney, to make said assignments. The answer sufficiently denies the assignment under oath, and calls for proof, but even if it did not, where an assignment purports to have been made by an attorney, there must be some evidence of his authority. There being no such evidence, the court erred, in admitting the mortgages and notes in evidence.

*Second.* The court properly rejected the letters of attorney to Wetmore. They could not be admitted without some evidence of their execution. The objections taken, are those which the law points out.

*Third.* The deed from Heyne and wife to Shrœder, was improperly admitted in evidence. It was not acknowledged as required by the law then in force, and as against us, was no evidence of title, or notice of title. The certificate does not show that the grantors were personally known to the officer taking the acknowledgment, or state how they were known to him.

*Fourth.* The tax deeds of 1848 and 1849, supported by the judgment of the district court, establish an independent title in the Abels. The law made the tax deeds *prima facie* evidence of the regularity of the proceedings to sell for taxes, and threw the burden of proof, to impeach the sale, on the complainant. He offered no evidence, to that point, and consequently, the proceedings are presumed to have been regular.

*Fifth.* The deed from Heyne and wife to Shrœder, not having been acknowledged as required by statute, was invalid as against us, and conveyed no title. The proceedings to foreclose the equity of redemption for the taxes of 1850 and 1851, was, therefore, properly commenced against Heyne, and a decree rendered against him.

STOCKTON, J.—This appeal properly brings up for our consideration the matters in dispute between the complainant, Bleidorn, and the Abels, and not those in dispute between complainant and the defendants, Heyne and Schrœder. Heyne made no appearance or defence to the action, and complainant was entitled to a judgment by default against him. Schrœder entered his appearance by attorney, and, so far as he was concerned, confessed the justice of complainant's claim. How far the complainant may have been entitled to represent the mortgagees, Bell and Hull, in their claims upon the land ; and how far the Abels were entitled to require that the claims of complainant, as the assignee of the mortgagees, Bell and Hull, so far as they were hostile to their own, should be made out by sufficient testimony, will be noticed in another part of this opinion.

1. The questions arising upon the demurrer of complainant to the answer of the Abels, are the same as those involved in the judgment of the court upon the final hearing. We shall consider these questions but once, as they all involve the sufficiency of the title to the land set up by the Abels, under the purchase at the sale for taxes, and the several conveyances made by virtue thereof. This sale was made by the treasurer of Johnson county, on the 19th of April, 1852, and the first deed relied on by defendants, is that made under it, for the taxes of 1848. In support of this deed, the defendants introduced a transcript of the judgment of the district court of Johnson county, at the March term, 1852, in favor of the state of Iowa, for the sale, as the law directs, of the lands returned delinquent, for the taxes of the years 1847 and 1848, including the lands in controversy. No return is shown, however, of any sale of the lands by the treasurer under this judgment ; nor does the deed show that it was made under a sale held by virtue of the judgment, or of any judicial proceedings had against the land. All that is shown is a certificate by the treasurer, to the effect that on the 19th of April, 1852, the defendant, Abel, purchased

the lands in dispute, for $22 94, the amount of delinquent taxes for the year 1848; that in two years, if not redeemed, he would be entitled to a deed; and that on the 26th of July, 1854, the lands not being redeemed, they were conveyed by the treasurer according to the certificate.

The deed is not assisted by the judgment, because no connection between the two is shown. *It stands by itself.* At the time of the sale, the act of February 27, 1847, (Session Acts, 136,) had been repealed by the Code, section 28. It was repealed without any saving of the remedies existing at the time, for the collection of taxes levied and delinquent; and there was no authority under the Code, for selling, in 1852, lands delinquent for the taxes 1848. We are, therefore, of the opinion that the treasurer's deed, under the sale made for the taxes of 1848, conveyed no title to defendants, and they were not entitled to give the same in evidence.

2. The defendants rely, also, on a treasurer's deed to them for the lands, under a sale thereof for the taxes of 1849, and a similar deed, under a sale for the taxes of 1850. The sale was made in each case, on the 19th of April, 1852; not by virtue of any judgment against the lands for taxes, under the act of February 27, 1847. No such judgment, at any rate, is produced. But, whether made under the act of 1847, or under the Code, the objections to the deeds are equally valid. Under the act of 1847, the sale could only take place in pursuance of a judgment in the district court, against the land, for taxes due and unpaid. Such judgment could only be rendered upon a return of the treasurer, showing that the taxes had remained due and unpaid for the term of two years from the first day of January, next after the delinquent list had been filed in his office. Section 44, 142, acts 1847. This list, the treasurer was required to make out and file, as soon as possible after the first day of January in each year. Section 41, 141. In a regular course of proceedings, there could rightfully have been no judgment against, or sale of, the lands, in 1852, for the unpaid taxes of 1849 and 1850.

Such has been the decision of this court upon a tax title derived under the act of 1844, the provisions of which are, in all respects, similar to the act of 1847, with the exception that, under the latter, the owner was allowed two years, from the day of sale, to redeem the land; and if not redeemed within that time, the purchaser was entitled to a deed. *Scott* v. *Babcock*, 3 G. Greene, 133; *Williams* v. *Gleason*, 5 Iowa, 284.  These remarks are made upon the assumption that the act of 1847, was in force at the time of the sale.   We are of opinion, however, that it was repealed by the Code, without any saving clause, and without any provision remaining to authorize a judgment against, or sale of, the lands, for the unpaid taxes of any year prior to its repeal.   Nor does the sale derive any support from the provisions of the Code.   Under section 496, the treasurer was authorized to sell, in each year, only the lands upon which the taxes levied the preceding year remained unpaid.   No authority to sell for the unpaid taxes of any year prior to 1851, was vested in the treasurer, until the passage of the act of January 22, 1853.   Session Acts, 129.

The defendants, Abels, in order further to maintain their right to the lands, gave in evidence a deed from the treasurer, under a sale of the lands for the taxes of 1851. This deed, the statute provides, conveys the title of the land to the purchaser, and is presumptive evidence of the regularity of all prior proceedings.   Code, section 503. The objections taken to this deed by complainant, that the sale under which it was made, was for the taxes of 1849 and 1850, as well as the tax of 1851, and that three several tracts of land were sold in gross, instead of being sold in parcels, as required by law, we do not at present consider.

In addition to the deed, the defendants have given in evidence, and rely upon, a decree of the district court of Johnson county, rendered at the November term, 1853, in a suit brought by them upon this deed, against John F. Heyne, their co-defendant, to foreclose the right of said Heyne to this land.   By this decree, it was adjudged that

" the equity of redemption to the land, be forever barred and foreclosed against the said Heyne and all persons claiming under him." Without undertaking to decide what effect must be given to the decree and proceedings in this suit, nor whether the objections taken by the complainant to the deed, are proper for our consideration, after the rendition of this decree, we think the objections urged to the conclusive effect of the decree upon the rights of complainant, are legitimate and valid. The proceedings in the foreclosure suit, were against Heyne alone. They bind, therefore, only the interest of Heyne, and not the interest of any person claiming a title to, or lien upon, the lands, previous to the tax sale, not a party to the suit. Now, the interest of complainant, if he shows himself the holder, in good faith, of the promissory notes secured by the mortgages, dates as far back as 1846. The proceedings in the foreclosure suit, were commenced in 1835. The complainant not having been made a party to that suit, is not bound by the decree, and his claim to the premises, under the mortgages, is in no manner affected by it.

Where the prior proceedings have been regular, the purchaser at the tax sale, acquires the lien of the tax upon the land. Code, section 503. This lien is in the nature of a mortgage, and the holder of the deed may institute a suit of foreclosure upon it, to bar the equity of redemption to the land. As in other cases of foreclosure of a mortgage, all incumbrances, whether prior or subsequent, not made parties, are not bound by the decree. *Veach* v. *Schaup et al.*, 3 Iowa, 194; Story Eq. Pl., section 193.

The questions relating to the proof of the assignment of the notes, and to the sufficiency of the certificates of acknowledgment of the power of attorney to Wetmore, and the deed to Schrœder, we have not deemed it necessary to consider. The ruling of the court upon these questions, was in favor of the complainant. Upon this ruling, he was entitled to a judgment against Heyne for the amount of the notes, and to a decree of foreclosure against the interest of Heyne and Schrœder, in the mortgaged premises.

As the final decree was against the complainant, dismissing his bill, we conclude that the district court was of opinion that the defendants, the Abels, by virtue of their tax deeds, acquired a title to the land, superior to that of complainant, or those under whom he claimed.  This judgment of the court dismissing the bill, based as it was on the adjudged paramount nature of the title of the Abels, was erroneous, and the same will be reversed, and the cause remanded for trial anew in the district court.

As the conclusive effect of the decree of foreclosure, obtained by the Abels on their tax deed, depends upon the question of complainant's right to the promissory notes, as the assignee of Bell and Hull, and upon the fact whether or not he was a prior incumbrancer upon the land, the defendants, the Abels, should have an opportunity of making every objection to the right of complainant to recover against Heyne, which, considering the position they occupy, and the relation they sustain to the other defendants, they are in justice entitled to make.  As complainant has made them parties to the suit, they are entitled to demand that plaintiff makes out his right to a decree against Heyne, by sufficient testimony.  Upon the admissibility of the testimony offered, and upon the· question of its sufficiency to authorize a recovery in the name of complainant against Heyne, we give no opinion.

Decree reversed.